Tavis McARTHUR, Plaintiff–Appellant,

v.

STATE FARM MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 09–4239.

United States Court of Appeals, Tenth Circuit.

Oct. 21, 2010.

A. Bryce Dixon, Dixon, Truman, Fisher & Clifford, P.C., St. George, UT, for Plaintiff–Appellant.

Stuart H. Schultz, Esq., Andrew D. Wright, Strong & Hanni, Salt Lake City, UT, for Defendant–Appellee.

Before BRISCOE, BALDOCK, and TYMKOVICH, Circuit Judges.

## ORDER CERTIFYING STATE LAW QUESTIONS TO THE SUPREME COURT OF UTAH

BOBBY R. BALDOCK, Circuit Judge.

The United States Court of Appeals for the Tenth Circuit, on Plaintiff Tavis McArthur's motion pursuant to 10th Cir. R. 27.1 and Utah R.App. P. 41, certifies the following questions to the Supreme Court of Utah:

A. Whether an exhaustion clause, which excludes underinsured motorist coverage contained in an automobile insurance policy absent a condition precedent, is generally unenforceable in the State of Utah as contrary to the State's public policy, to wit:

THERE IS NO COVERAGE UNTIL:

1. THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS TO OTHER *PERSONS;* OR

2. SUCH LIMITS OF LIABILITY OR REMAINING PART OF THEM HAVE BEEN OFFERED TO THE *INSURED.*

B. Provided that the aforementioned exhaustion clause is *not* generally unenforceable in the State of Utah as contrary to the State's public policy, whether the enforceability of such clause is contingent upon the insurer establishing actual prejudice to its economic interest.

*See* Appellee's Supp. App'x. at 86. The certified questions are likely dispositive in a proceeding before the Tenth Circuit and no Utah law appears to control the answers to the certified questions. *See* Utah R.App. P. 41(c)(1)(B)-(C). The background relevant to a determination of the certified questions are set forth below. *See* Utah R.App. P. 41(c)(2).

## I.

Plaintiff was riding his motorcycle in St. George, Utah, when a tortfeasor's vehicle collided with him and caused him harm. The tortfeasor's insurance carrier settled with Plaintiff for $90,000. The liability limit of the tortfeasor's policy was $100,000. Asserting the collision caused him damages in excess of $200,000, Plaintiff submitted a claim to his insurance carrier, Defendant State Farm Mutual, to collect the $100,000 liability limit of his underinsured motorist (UIM) coverage. State Farm denied Plaintiff's claim for UIM coverage based on such coverage's exhaustion clause because Plaintiff had settled with the tortfeasor's insurance carrier for less than the liability limit of the tortfeasor's policy.

Following State Farm's denial of his UIM claim, Plaintiff commenced this diversity action against State Farm in federal district court pursuant to 28 U.S.C. § 1332. Prior to discovery, the parties filed cross motions for summary judgment, per Fed.R.Civ.P. 56, on the question of the exhaustion clause's enforceability under Utah law. Plaintiff acknowledged the plain language of the exhaustion clause, if enforceable, foreclosed any claim for UIM coverage against his insurance carrier. Plaintiff posited, however, that the exhaustion clause was unenforceable as contrary to Utah public policy, namely the policy of encouraging settlement and discouraging litigation. Plaintiff asserted he could not realistically afford to forego settlement and litigate his case against the tortfeasor where he stood to gain at most the remaining $10,000 of the tortfeasor's liability limit, an amount much less than the fees and costs Plaintiff likely would incur in pursuing protracted litigation. Plaintiff further posited that because State Farm, as Plaintiff's UIM carrier, was entitled to a credit for the entirety of the tortfeasor's $100,000 liability limit, State Farm would suffer no prejudice from Plaintiff having failed to exhaust the liability limit of the tortfeasor's policy. Rather, Plaintiff asserted the exhaustion clause, if enforceable, would effectively grant State Farm a technical excuse to deny Plaintiff UIM coverage and award State Farm a windfall as a conse-

quence of Plaintiff's settlement with the tortfeasor's insurance carrier.

State Farm countered with the proposition that in enacting Utah Code Ann. § 31A–22–305.3(5) (Supp.2009) and the surrounding statutory scheme related to UIM coverage, the Utah legislature effectively endorsed the enforceability of the exhaustion clause. Section 31A–22–305.3(5) provides:

> (5)(a) Within five business days after notification that all liability insurers have tendered their liability policy limits, the underinsured carrier shall either:
>
>> (i) waive any subrogation claim the underinsured carrier may have against the person liable for the injuries caused in the accident; or
>>
>> (ii) pay the insured an amount equal to the policy limits tendered by the liability carrier.
>
> (b) If neither option is exercised under Subsection (5)(a), the subrogation claim is considered to be waived by the underinsured carrier.

According to State Farm, § 31A–22–305.3(5)(a), like the exhaustion clause at issue in this case, contemplates the exhaustion of the liability limit of a tortfeasor's insurance policy as a precondition to UIM coverage. State Farm further argued the benefits of enforcing the exhaustion clause as written are clear, namely protecting freedom of contract; preserving UIM coverage as affordable, secondary coverage; protecting an insurer's subrogation rights; and preventing insureds from recovering UIM benefits despite settling for a nominal amount with the liability carrier.

Over Plaintiff's objection that § 31A–22–305.3(5) is simply designed to protect an insured from having the insurer deny UIM coverage under the pretext of a violation of the insurer's subrogation rights, the district court interpreted the statute as en-

dorsing the enforceability of the exhaustion clause at issue and granted summary judgment in favor of State Farm:

> The plain meaning of [§ 31A–22–305.3(5) ] must . . . be interpreted as an exhaustion clause. The insurer only has to pay within five days of notification that the utmost amount of the liability policy of the tortfeasor has been paid. Because [§ 31A–22–305.3] mandates all drivers to have a UIM policy, absent a specific set of circumstances, and [§ 31A–22–305.3(5) ] directs the UIM carriers to pay benefits only after all liability insurers have tendered the limits of their policies, the legislature has stated in clear, unambiguous terms both the requirements of UIM coverage and the public policy of Utah as well.
>
> The [policy] language mirrors the statute in requiring the limits of the other available liability policies be paid out before the underinsured carrier, Defendant in this case, is liable to make additional payments to the insured.

*McArthur v. State Farm Mut. Ins. Co.,* 2009 WL 4884382, at *3 (D.Utah 2009) (footnotes omitted). Plaintiff timely appealed to this Court.

## II.

In formulating the foregoing questions for certification, we have relied on the Supreme Court of Utah's decision in *State Farm Mut. Auto. Ins. Co. v. Green,* 89 P.3d 97 (Utah 2003). In *Green,* the Supreme Court addressed the enforceability of an insurance policy's "consent to settle exclusion" designed to bar UIM coverage where an insured, absent the insurer's written consent, settled with a tortfeasor's insurance carrier. The Court engaged in a three-part analysis. *Green,* 89 P.3d at 100. The Court first asked whether the exclusion was generally enforceable under Utah

law. *Id.* at 101–02. Because the Court answered its first inquiry yes, the Court next asked whether the insured "breached" the terms of the consent to settle exclusion when she settled with the tortfeasor absent her insurer's written consent. *Id.* at 102–03. Because the Court answered its second inquiry yes, the Court finally asked whether the insured's failure to obtain the insurer's consent was material so as to relieve the insurer of an obligation to pay the insured's UIM claim. *Id.* at 103–05. In addressing its third inquiry, the Court held the insured's failure to obtain the insurer's consent in breach of the exclusion was material only if such failure resulted in an actual impairment of the insurer's ability to recover through subrogation: "The actual prejudice rule strikes an appropriate balance between protecting an insurer's interests and avoiding forfeiture of [UIM] coverage when an insurer has not been harmed." *Id.* at 104.

Consistent with *Green*'s three-part approach, the first question we have certified inquires as to the general enforceability of the exhaustion clause under Utah law. *If* the clause is generally enforceable, the next question is whether Plaintiff failed to meet its precondition to obtaining UIM benefits. Because Plaintiff has acknowledged he did not meet this precondition, we proceed directly from the first to the third inquiry, that is, whether State Farm must establish actual prejudice to justify the denial of UIM benefits. This third inquiry is the second question we have certified. Needless to say, the outcome of this proceeding turns upon important state law questions of public policy, statutory interpretation, and insurance contract construction which we believe the Supreme Court of Utah should have the opportunity to address in the first instance. Therefore, we conclude certification of the above questions would further the interests of

comity and federalism by giving the Supreme Court of Utah an opportunity to answer the questions should it elect to do so under Utah R.App. P. 41(e). The Clerk of this Court shall transmit a copy of this certification order to counsel for all parties. The Clerk shall also forward, under the Tenth Circuit's official seal, a copy of this certification order and the briefs filed in this Court to the Supreme Court of Utah. This appeal is ABATED pending resolution of the certified questions.